### In the Matter of U.L. RADIO CORP., Debtor.

### Bankruptcy No. 81 B 11067.

United States Bankruptcy Court, S. D. New York.

April 19, 1982.

---

Ressler & Taub, New York City, for debtor.

Chadbourne, Parke, Whiteside & Wolff, New York City, for Rockwell International Credit Corp.

Epstein, Reiss & Goodman, New York City, for Proposed Assignee.

Finkel, Goldstein & Berzow, New York City, for Jemrock Realty Co.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Debtor, U.L. Radio Corp., has moved for an order, pursuant to Bankruptcy Code section 365(f), authorizing it to assume its lease ("Lease") with Jemrock Realty Company ("Jemrock"), the landlord, and authorizing U.L. Radio to assign the Lease to Just Heaven Restaurant, Ltd. ("Just Heaven"). U.L. Radio operates the leasehold as a television sales and service store. Just Heaven, the prospective assignee, will operate the premises as a small bistro. Jemrock opposes such an assignment, citing a use clause in the Lease which provides that the lessee shall use the premises only for television service and sale of electrical appliances. Jemrock asserts that the assignment of the Lease to Just Heaven would unlawfully modify the Lease by violating the use clause. Such modification, Jemrock avers, is not permitted under section 365 without the landlord's consent, which consent Jemrock withholds.

After a hearing, the Court ordered the parties to submit proposed findings of fact and conclusions of law [hereinafter "Findings and Conclusions"]. The Court has considered all the papers submitted by the parties, the oral arguments and the applicable law and legislative history. The Court grants debtor's motion to assume and assign the Lease to Just Heaven.

## I. *Background*

On September 17, 1979, the debtor entered into the Lease with Jemrock for a store located at 2656 Broadway, New York, New York. The store is located in a building which is also occupied by a grocery store, a Chinese restaurant, a liquor store, and 170 apartments. The term of the Lease is for ten years. The rent required to be paid is as follows: $9600 per year from November 1, 1979, to October 31, 1982; $10,800 from November 1, 1982, to October 31, 1985; and $12000 from November 1, 1985 to October 31, 1989. Paragraph 43 of the Rider to the Lease provides that the tenant may assign the Lease with the written consent of the Landlord, which consent is not to be unreasonably withheld.

On May 20, 1981, the debtor filed an original petition under Chapter 11 of the Bankruptcy Code and continues to operate its business as debtor in possession. No creditors' committee has been formed. The debtor intends to propose a liquidation plan of reorganization. The debtor is current in the payment of rent and related charges required by the terms of the Lease and is not in default of any of the Lease terms.

In furtherance of its intention to liquidate all of its assets and to propose a plan of reorganization, the debtor, subject to the approval of this Court, entered into an assignment of the Lease to Just Heaven. The proposed assignment provides, *inter alia*, that Just Heaven will pay to the Debtor as consideration for the assignment as follows: for the period commencing three months after this Court's approval of the assignment to October 31, 1988, the sum of $2000 per month. Such payments will fund a plan paying unsecured creditors 100 percent of their claims. Rockwell International, the largest creditor, recommends the assignment.

The president of Just Heaven has executed a personal guarantee for the payment of rent in favor of the landlord for the first two years of the assignment, together with a statement that her net worth exceeds $50,000.

The Lease provides in paragraph 45 of the rider to the Lease that "any noise emanating from said premises shall be deemed a breach of the terms and conditions of this Lease." Just Heaven has allocated $20,000 for construction, including soundproofing. David Humpal St. James, Vice President and Secretary as well as a director and a shareholder of Just Heaven, is a noted interior designer including the design of commercial restaurants. His design work has involved soundproofing. *See* Affidavit of David Humpal St. James.

II. *Issues*

Two issues confront this Court:

(1) Have the provisions of section 365, regarding assumption and assignment of leases, been satisfied?

(2) Can deviation from a use clause prevent the assignment of a lease, when the assumption and assignment otherwise comport with the requirements of section 365?

III. *Assumption and Assignment Under Section 365*

Code section 365 governs the assumption and assignment of executory contracts, providing broad authority to a trustee or debtor in possession [1] to assume and assign an unexpired lease. 11 U.S.C. § 365(a); *see* Report of the Committee on the Judiciary, *Bankruptcy Law Revision*, H.R.Rep.No.95–595, 95th Cong., 1st Sess. 347 (1977) [hereinafter "House Report"]; Report of the Committee on the Judiciary, *Bankruptcy Reform*, S.Rep.No.95–989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 [hereinafter "Senate Report"]; *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993, 997 (Bkrtcy.E.D.N.Y.1981); 2 *Collier on Bankruptcy* ¶ 365.01 (15th ed. 1981). The aim of this statutory authority to assume a lease is to "assist in the debtor's rehabilitation or liquidation." *House Report* at 348, U.S.Code Cong. & Admin.News 1978, p. 6304; *Senate Report* at 59, U.S. Code Cong. & Admin.News 1978, p. 5845.

Assignment of a lease, which is at issue here, must comply with section 365(f), which states:

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

(3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

Subsection (f)(1) "partially invalidates restrictions on assignment of contracts or leases by the trustee to a third party." *House Report* at 349, U.S.Code Cong. & Admin.News 1978, p. 6305; *Senate Report* at 59, U.S.Code Cong. & Admin.News, p. 5845; *see* Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code*, 64 Minn.L.Rev. 341, 360 (1980) [hereinafter "Executory Contracts"]. Subsection (f)(2) "imposes two restrictions on assignment by the trustee: (1) he must first assume the contract or lease, subject to all the restrictions found in the section; and (2) adequate assurance of future performance must be provided to the other contracting party." *House Report* at 349, U.S.Code Cong. & Admin.News 1978, p. 6305; *Senate Report* at 59, U.S.Code Cong. & Admin.News 1978, p. 5845.[2] Finally, subsection (f)(3) "invali-

---

**1.** Code section 1107 vests the rights, powers, and duties of a trustee in a debtor in possession.

**2.** Code section 365(f) does not state which party must provide assurance. However, since

Code section 365(k) relieves the debtor-assignor of liability under the lease after assignment,

dates contractual provisions that permit termination or modification in the event of an assignment, as contrary to the policy of this subsection." *House Report* at 349, U.S. Code Cong. & Admin.News 1978, p. 6305; *Senate Report* at 59, U.S.Code Cong. & Admin.News 1978, p. 5845.

### A. *Requirements of Assumption*

The first requirement of assignment under section 365(f)(2) is proper assumption under section 365. 11 U.S.C. § 365(f)(2)(A). The broad authority of a trustee or debtor in possession to assume is limited in Code section 365 by subsections (b), (c), and (d). *House Report* at 347; *Senate Report* at 58.

Section 365(b)(1) and (2) prescribe conditions to assumption of a lease if a default has occurred. "Subsection (b) requires the [debtor] to cure any default in the . . . lease and to provide adequate assurance of future performance . . . before he may assume." *House Report* at 347, U.S.Code Cong. & Admin.News 1978, p. 6304; *Senate Report* at 58, U.S.Code Cong. & Admin.News 1978, p. 5844; 2 *Collier on Bankruptcy* ¶ 365.04 (15th ed. 1981). No default exists under the Lease before this Court; therefore, the subsection (b) requirements for assignment are not applicable.

Section 365(c) prohibits a debtor from assuming a lease if applicable nonbankruptcy law "independent of any language in the contract or Lease itself" excuses the other party from giving performance to or receiving performance from someone other than the debtor. *House Report* at 348, U.S.Code Cong. & Admin.News 1978, p. 6304; *Senate Report* at 59, U.S.Code Cong. & Admin. News 1978, p. 5845. Such "nondelegable" [3] and, therefore, non-assumable contracts and leases include those for unique personal services, as well as those to extend credit, to make loans, and to issue securities. The Lease before this Court does not fall under

the prohibition of section 365(c). *See In re Taylor Manufacturing, Inc.*, 6 B.R. 370 (Bkrtcy.N.D.Ga.1980).

Section 365(d) sets time limits on the assumption of unexpired leases. The time requirements of subsection (d) have been met and are not at issue.

### B. *Adequate Assurance of Future Performance*

The second requirement of assignment under section 365(f)(2) is adequate assurance of future performance ("adequate assurance"). 11 U.S.C. § 365(f)(2)(B). Adequate assurance also appears in section 365(b) as a requirement of assumption if an executory contract is in default. 11 U.S.C. § 365(b)(1)(C). The phrase "adequate assurance of future performance" is not found in the Bankruptcy Act.

Adequate assurance is not defined in section 365(f) nor in the legislative history of section 365(f), but "[t]he definition should generally be the same as in section 365(b)." Fogel, *Executory Contracts* at 362. In the legislative history of section 365(b), Congress while discussing assumption under section 365(b) and the bankruptcy clause under section 365(f), provided this explanation of adequate assurance:

> If a trustee is to assume a contract or lease, the courts will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of the bargain."

*House Report* at 348, U.S.Code Cong. & Admin.News 1978, pp. 6304–6305; *Senate Report* at 59, U.S.Code Cong. & Admin. News 1978, p. 5845.

Beyond equating adequate assurance with the full benefit of the bargain, Congress offers no definition of adequate assurance except in the case of real property leases in shopping centers.[4] The Lease

---

it is sensible that the assignee must provide the assurance of performance.

**3.** Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code*, 64 Minn.L.Rev. 341, 351 (1980).

**4.** Regarding real property leases in shopping centers, Congress expressly defined adequate assurance in Code section 365(b)(3), including adequate assurance:

    (A) of the source of rent . . .

    (B) that any percent rent due under such lease will not decline substantially;

at issue here is not located in a shopping center. Congress described a shopping center as "often a carefully planned enterprise, and though it consists of numerous individual tenants, the center is planned as a single unit, often subject to a master lease or financing agreement." *House Report* at 348, U.S.Code Cong. & Admin.News 1978, p. 6305. The building in which U.L. Radio is located is primarily a residential apartment building, with a liquor store, a grocery store, a restaurant, and U.L. Radio on the first floor. Thus the specific provisions of adequate assurance in the shopping center case do not apply to the assignment at issue here. *See In re Lafayette Radio Electronics*, 9 B.R. at 998.

■ Apart from shopping center leases, Congress "entrusted the courts with the definition of adequate assurance of the performance of contracts and other leases." Fogel, *Executory Contracts* at 359. Adequate assurance of future performance are not words of art, but are to be given practical, pragmatic construction. What constitutes "adequate assurance" is to be determined by factual conditions. *In re Sapolin Paints, Inc.*, 5 B.R. 412, 420–21 (Bkrtcy.E.D. N.Y.1980); *In re Lafayette Radio Electronics*, 9 B.R. at 998. The broad authorization of the trustee or debtor to assume or assign unexpired leases, notwithstanding anti-assignment or bankruptcy clauses, prompted the admonition from Congress that the courts must "be sensitive to the rights of the nondebtor party to . . . unexpired leases." *House Report* at 348, U.S.Code Cong. & Admin.News 1978, p. 6304; *Senate Report* at 59, U.S.Code Cong. & Admin.News 1978, p. 5845.

The phrase "adequate assurance of future performance" was adopted from Uniform Commercial Code section 2–609. Report of the Commission on Bankruptcy Laws of the United States, H.R.Doc.No.93–137, 93d Cong., 1st Sess. Pt. II 156–57 (1973). U.C.C. section 2–609 provides that a party with reasonable grounds for insecurity regarding another party's performance may demand "adequate assurance." [5] Official Comment 4 to section 2–609 discusses, *inter alia, Corn Products Refining Co. v. Fasola*, 94 N.J.L. 181, 109 A. 505 (1920), and *James B. Berry's Sons Co. of Illinois v. Monark Gasoline & Oil Co., Inc.*, 32 F.2d 74 (8th Cir. 1929), and indicates that "adequate assurance" focuses on the financial condition of a contracting party and his ability to meet his financial obligations. Regarding adequate assurance under an assignment pursuant to section 365(f)(2), the Court in *In re Lafayette Radio Electronics* stated, "[T]he Court's primary focus will be on the ability of [the assignee] to comply with the financial obligations under the agreement." 9 B.R. at 998.[6]

In *In re Pin Oaks Apartments*, 7 B.R. 364, 6 B.C.D. 1396 (Bkrtcy.S.D.Tex.1980), the Court found that changes in financial provisions of a lease, a percentage rental clause and a sublease provision which protected that rental clause, precluded a finding that adequate assurance had been provided because of the drastic effect the changes would have on rentals received.

■ Thus, the primary focus of adequate assurance is the assignee's ability to satisfy financial obligations under the lease. In this case, the president of the assignee has executed a personal guarantee of the payment of rent in favor of the landlord for the first two years of the assignment, together with a statement that her net worth exceeds $50,000. The assignee has budget-

---

(C) that assumption or assignment of such lease will not breach substantially any provision such as radius, use, or exclusivity provision, in any other lease, financing agreement, or master agreement relating to such shopping center; and
(D) that assumption or assignment of such lease will not disrupt substantially any tenant mix or balance in such shopping center.
11 U.S.C. § 365(b)(3)(A)- (D).

5. U.C.C. § 2–609 uses both "due performance" and "future performance", which are roughly equivalent phrases.

6. The *Lafayette Radio* Court found that the agreement in that case was a sublease not an assignment. Thus, the Court's inquiry was the debtor's ability to fulfill the financial obligations of the lease. 9 B.R. at 998. Nonetheless, *financial* wherewithal is the key component of adequate assurance.

ed $20,000 for construction, enhancing the chances of success of the assignee's enterprise. The assignee will have operating capital of an additional $30,000. Affidavit of David Humpal St. James at p. 3. Upon these facts, the Court rules that adequate assurance of future financial performance has been provided by the assignee.

## IV. *Use Clause*

However, adequate assurance of future financial performance is not the complete statutory requirement; adequate assurance of future performance is. The financial capability of an assignee may be sufficient for a finding of adequate assurance under an executory sales contract or a similar commercial transaction. In a landlord-tenant relationship, more than an assignee's ability to comply with the financial provisions of a lease may be required. More particularly, will compliance with a use clause be required in order to provide adequate assurance?

Congress indicates that adequate assurance will give the landlord the full benefit of his bargain. *House Report* at 348; *Senate Report* at 59. In its case-by-case determination of those factors, beyond financial assurance, which constitute the landlord's bargain, the Court will generally consider the provisions of the lease to be assigned. *See In re Lafayette Radio Electronics*, 9 B.R. at 998 (a "landlord cannot be granted any greater rights than what the lease provides"); *In re Pin Oaks Apartments*, 7 B.R. at 369, 6 BCD at 1400 (citing *Hurley v. Atcheson, Topeka & Santa Fe Ry.*, 213 U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729 (1909), for the proposition that assumption and assignment of a lease entails acceptance by the assignee of the burdens as well as the benefits of the lease).

However, it is equally clear that, by requiring provision of adequate assurance under section 365, i.e., "the lessor's receipt of the 'full benefit of his bargain'," Congress did not require the Court to assure "literal fulfillment by the lessee of each and every term of the bargain." Simpson, *Leases and the Bankruptcy Code: The Protean Concept of Adequate Assurance of Future Performance* at 35 (unpublished draft in Bankruptcy Court, S.D.N.Y.) [hereinafter "Leases"]. Section 365, by its own terms, empowers the court to render unenforceable bankruptcy clauses and anti-assignment clauses which permit modification or termination of a lease for filing in bankruptcy or assignment of the lease. 11 U.S.C. § 365(e), (f)(3). Section 365(k) relieves the estate of liability for future breaches of a lease after assignment, notwithstanding lease provisions to the contrary. 11 U.S.C. § 365(k); *see* Simpson, *Leases* at 39.

The Court in *In re Pin Oaks Apartments* argued that court authority to abrogate lease provisions extends only to those provisions expressly stated by Congress:

> If Congress intended to give this Court or the trustee the power to abrogate any contractual rights between a debtor and non-debtor contracting party other than anti-assignment and "ipso facto" [i.e. bankruptcy] clauses, it would have expressly done so.

7 B.R. at 367, 6 B.C.D. at 1398.

Such a narrow view of court authority is not supported by the statute or the legislative history. First, such a narrow view would frustrate the express policy of Congress favoring assignment. Under the *Pin Oaks* reasoning, lessors could employ very specific use clauses to prevent assignment and thus circumvent the Code. Section 365(f), in broad language, empowers the Court to authorize assignment of an unexpired lease and invalidate any lease provision which would terminate or modify the lease because of the assignment of that lease. 11 U.S.C. § 365(f)(1), (3). Any lease provision, not merely one entitled "anti-assignment clause", would be subject to the court's scrutiny regarding its anti-assignment effect. The court could render unenforceable any provision whose sole effect is to restrict assignment, "as contrary to the policy of [subsection (f)(3)]." *House Report* at 349; *Senate Report* at 59.

Further, when Congress intended that all terms and provisions of an agreement remain unaltered, it expressly stated such an

intent. Section 1124 sets down stringent requirements to define unimpaired claims, requiring the cure of defaults and the unaltered maintenance of legal, equitable, and contractual rights. 11 U.S.C. § 1124(2)(D). As one commentator points out, these expressed, stringent requirements for unimpaired claims differ from the requirement that Congress mandated under section 365 —mere provision of adequate assurance. Simpson, *Leases* at 40–1. Under both sections 1124 and 365, Congress expressly stated the requirements. Under section 365, literal compliance with all lease terms was not required. Even under the tightly drawn definition of adequate assurance in the shopping center case, Congress did not envision literal compliance with all lease provisions; insubstantial disruptions in, *inter alia,* tenant mix and insubstantial breaches in other leases or agreements were contemplated and allowed. 11 U.S.C. § 365(b)(3)(C), (D); Simpson, *Leases* at 28; *In re Russell Johns,* 1 CBC 2d 174 (B.C.D. Nev.1979) (insubstantial change in use of leasehold located in shopping center, from adult discotheque to male striptease showcase, permitted).

■ Thus, provision of adequate assurance of future performance does not require an assignee's literal compliance with each and every term of the lease. The court may permit deviations from strict enforcement of any provision including a use clause. *See* Simpson, *Leases* at 41.

One commentator suggested that the court render completely invalid any use clause in a non-shopping center lease because: (1) "the lessor is seeking to protect his tenant mix with the lease provision, and the Code does not require the court to provide such protection"; and (2) a use clause "invalidly conditions assignment." Fogel, *Executory Contracts* at 364 (footnote omitted); *see* Simpson, *Leases* at 37 n.45. The Court rejects this *"per se* unenforceable" reading of a use clause.

■ However, the Court will not go to the other extreme and adopt the "insubstantial" breach or disruption standard for non-shopping center cases that is applicable only to shopping center leases. The insubstantial breaches and disruptions language of section 365(b)(3) "clearly reflects an attempt to limit the effects of what was understood—and feared—to be the more expansive authority conferred by the balance of [s]ection 365(a)." Simpson, *Leases* at 37–38 (referring to Krasnowiecki & Vass, *Shopping Centers and the New Bankruptcy Code,* 36 Bus.Law. 79, 92 (Nov. 1980); *see* Fogel, *Executory Contracts* at 359). The Court's authority to waive strict enforcement of lease provisions in the non-shopping center cases will permit deviations which would exceed those permitted in the shopping center cases. *See* Simpson, *Leases* at 39.

Within the range between unenforceability of a use clause and insubstantial breaches of a use clause, the Code provides no specific standard by which to measure permissible deviations in use. Whatever standard is applied must serve the policy aims of Congress.

Section 365 expresses a clear Congressional policy favoring assumption and assignment. Such a policy will insure that potential valuable assets will not be lost by a debtor who is reorganizing his affairs or liquidating assets for distribution to creditors. This policy parallels case law which disfavors forfeiture. *See In re Huntington Limited,* 654 F.2d 578, 584 n.7 (9th Cir. 1981); 2 *Collier on Bankruptcy* ¶ 365.06 n.1 (15th ed. 1981). To prevent an assignment of an unexpired lease by demanding strict enforcement of a use clause, and thereby contradict clear Congressional policy, a landlord or lessor must show that actual and substantial detriment would be incurred by him if the deviation in use was permitted.

■ In this case, the contemplated deviation in use is from an appliance store to a small bistro. The building in which the unexpired leasehold is located already contains a restaurant, a laundry, and a liquor store. The landlord has failed to demonstrate any actual and substantial detriment which he would incur if the proposed devia-

tion in use is permitted. The Court also notes that the contemplated use, along with the planned soundproofing, will have no adverse effect on other tenants in the building. Thus, this Court rules that the use clause may not be enforced so as to block assignment of this lease to Just Heaven. The fact that Jemrock withholds its consent to the proposed assignment will not prevent the assignment. Consent is required only in leases governed by section 365(c). The lease here is not subject to section 365(c). *See In re Taylor Manufacturing, Inc.*, 6 B.R. 370, 372 (Bkrtcy.N.D.Ga.1980).

■ Finally, the Court briefly addresses the constitutional issue raised by the deviation in the contractual terms of the lease. Can a landlord assert a violation of the Fifth Amendment which prohibits the taking of property without due process of law? The Court in *In re Sapolin Paints, Inc.*, 5 B.R. 412 (Bkrtcy.E.D.N.Y.1980), denied the enforceability of a bankruptcy clause, stating:

> "Bankruptcy proceedings constantly modify and affect property rights established by state law." *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 517 [58 S.Ct. 1025, 1033, 82 L.Ed. 1490] ... (1938). The power given Congress by Article I, Section 8, of the Constitution to establish uniform laws relative to bankruptcy gives it broad latitude to effect both contract and property rights. *Wright v. Union Central Life Ins. Co., supra; Kuehner v. Irving Trust Co.*, 299 U.S. 445 [57 S.Ct. 298, 81 L.Ed. 340] ... (1937); *Continental Illinois National Bank & Trust Co. v. Chicago-Rhode Island P.R. Co.*, 294 U.S. 648 [55 S.Ct. 595, 79 L.Ed. 1110] ... (1935).

*Id.* at 423; *see In re Huntington Limited*, 654 F.2d 578, 590 (9th Cir. 1981) (Circuit Court permitted assumption and assignment of a lease and permitted assignee to further hypothecate the lease in contravention of lease provision).

Congress, in section 365, has stated a general policy favoring assignment. Balanced against this general policy is the requirement that the non-debtor contracting party receive the full benefit of his bargain. Jemrock Realty will receive the full benefit of its bargain under the proposed assignment of the leasehold from U.L. Radio to Just Heaven. No defaults exist under the lease. The lease has properly been assumed and Just Heaven has provided adequate assurance of future performance. The landlord has shown no actual or substantial detriment to him from the proposed assignment. The statutory requirements have been satisfied. The assignment is authorized.

It is so ordered.