**In re ALIPAT, INC., d/b/a The Fitness Center, Debtor.**

**Bankruptcy No. 83–01148(3).**

United States Bankruptcy Court, E.D. Missouri, E.D.

Jan. 6, 1984.

Charles W. Riske, Kirkwood, Mo., for trustee.

Lloyd A. Palans, Clayton, Mo., for debtor.

Leslie A. Davis, Stan J. Goodkin, Clayton, Mo., for Alina Rivero.

Robert Denlow, Clayton, Mo., for Patricia Thuernau and Clayton Fitness Center, Ltd.

Curtis L. Mann, J.B. Carter, Robert B. Leggat, Jr., Clayton, Mo., for Helvic Realty, Inc.

### MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

This matter is before the Court upon the objection of Helvic Realty, Inc. (lessor) to the Chapter 7 trustee's application to assign an unexpired commercial lease. A brief review of the facts as they appear from the record is necessary here.

The debtor corporation filed a voluntary Chapter 7 bankruptcy petition on June 29, 1983. The petition was signed by Alina

Rivero as the debtor's sole director and secretary/treasurer. On August 1, 1983, Ms. Rivero, in her individual capacity, filed a motion to compel the trustee to assume the lease with Helvic Realty, Inc. On August 2, 1983, the debtor filed a similar request. The record reflects the following activity during the weeks thereafter:

August 10: The trustee filed a notice of his intention to sell the estate interest in the lease;

August 18: The lessor, represented by the law firm of Mann, Poger & Wittner, filed an objection to the trustee's notice of intent to sell;

August 19: The lessor filed an application to abandon the estate interest in the lease; the application was amended on September 21, 1983;

August 29: Clayton Fitness Center, Inc., which described itself as a post-bankruptcy lessee of the premises which are the subject of this proceeding, represented by Robert Denlow, filed an objection to the trustee's sale and an application to abandon the estate interest in the lease;

Oct. 3: The Court granted the lessor's request to continue the hearings on the various motions and applications;

Nov. 8: The Bankruptcy Court entertained oral arguments, and thereafter entered an order from the bench finding that the lease had not been terminated prior to bankruptcy. The Court also granted the trustee's motion to assume the unexpired lease, consistent with the announced findings and conclusions. These orders were subsequently appealed by the lessor and by Clayton Fitness Center, Ltd.[1]

Nov. 10: The trustee filed a notice of his intention to conduct an auction sale of the estate interest in the unexpired lease;

Nov. 21: Patricia Thuernau, Ms. Rivero's former partner and shareholder in the debtor corporation, filed an objection to the trustee's proposed sale; the objection was denied after a telephone conference call involving the trustee's counsel, Ms. Thuernau's counsel (Mr Denlow), and the Court;

Nov. 28: Prior to the auction, the trustee announced that his application to assign the lease would be considered by the Court at a hearing on December 7, 1983; thereafter, the trustee accepted, subject to Court approval, the highest bid, in the amount of $52,500.00, presented by Alina Rivero; the lessor was present and participated in the bidding process;

Nov. 30: Helvic Realty, Inc., by its new counsel, J.B. Carter, filed an objection to the trustee's application to assign the unexpired lease to the highest bidder; Helvic Realty also requested that the hearing on December 7 be continued because of a conflict in its counsel's trial schedule, and to permit additional time to determine if the highest bidder was acceptable as an assignee;

Dec. 6: Brief findings were entered by the Court in an order which denied the lessor's request for a continuance of the December 7 hearing on the trustee's application to assign the lease;

Dec. 7: Testimony, evidence and oral arguments were presented at the hearing on the trustee's application to assign; the objections were prosecuted on behalf of Helvic Realty, Inc. by its new counsel, Robert Leggat, Jr., and on behalf of Patricia Thuernau by her counsel, Robert Denlow; the matter was then taken as submitted without a request for written briefs, to allow the Court to examine the documents submitted at the hearing.

## FINDINGS AND CONCLUSIONS

Pursuant to Section 365(f), the trustee may assign an executory contract or unexpired lease if he has assumed the contract or lease, and if the other party to the

---

1. The post-bankruptcy lease is dated July 1, 1983, and identifies the lessee as the Clayton Fitness Center, Ltd. The reference to Clayton Fitness Center, *Inc.* in the August 29, 1983, application to abandon appears to have been a misidentification.

contract or lease can be provided adequate assurance of future performance.[2] The trustee had complied with the first requirement on November 8, 1983, when the Court granted his request to assume the unexpired lease. The Court determined at that time that the trustee was not required to cure a default prior to assuming the lease, because no pre-bankruptcy default was found to exist.[3] No evidence of a post-petition default was presented, presumably because the lessor had argued that the lease had been terminated prior to bankruptcy.

The evidence and testimony presented at the hearing on December 7, 1983, was directed primarily toward the second requirement involving adequate assurance of future performance under the lease by Ms. Rivero. It is that question which is addressed here. This memorandum is based upon a consideration of the record as a whole through the conclusion of the hearing on December 7, 1983.

Section 365(f) of the Bankruptcy Code does not provide a definition of "adequate assurance of future performance." However, a possible definition may have been suggested by Congress in Subparagraph (b) of Section 365, as follows: if there has been a default in an executory contract or unexpired lease, the trustee may not assume such contract or lease unless he or she cures the default, compensates the other party, and provides adequate assurance of future performance, as set out at 11 U.S.C. § 365(b). If the lease involves real property in a shopping center, the Code requires that adequate assurance of future performance include adequate assurance of the source of rent, of substantial compliance with any master agreements, and an assurance that the tenant mix will not be substantially disrupted. 11 U.S.C. § 365(b)(3). The lease under consideration in this case does not involve a shopping center; therefore, the specific assurances set out above need not be established as an absolute requirement for assignment by the trustee. However, these assurances may be considered by the Court as an indication of the Congressional intent which was the basis for the requirement of adequate assurance as a condition of assignment.

Other statutes may provide additional considerations which may be applicable in

---

2. 11 U.S.C. § 365(f) reads as follows:

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

(3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

3. 11 U.S.C. § 365(b)(1) and (2) read as follows:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

(2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

defining "adequate assurance" as it is used in the Bankruptcy Code. It has been suggested that the Bankruptcy Code borrowed its critical language in Section 365 from Section 2–609 of the Uniform Commercial Code.[4] *In re Sapolin Paints, Inc.,* 5 B.R. 412, 421; 6 BCD 776 (Bkrtcy.E.D.N.Y.1980). The Commentaries to the Uniform Commercial Code suggest that adequate assurance is to be defined by commercial rather than legal standards when the parties to the contract are merchants. Official Comment 3 To Uniform Commercial Code § 2–609 (1972 Edition). In considering these commentaries, the *Sapolin* Court stated that adequate assurance is to be determined by factual considerations.

Other Courts have concluded that, "The primary focus of any inquiry into adequate assurance will be the ability of the assignee to satisfy the financial obligations of the lease." *In re Brentano's,* 10 B.C.D. 157, 27 B.R. 90 (Bkrtcy.S.D.N.Y.1983). *See also, In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 6 B.C.D. 1197 (Bkrtcy.E.D.N.Y.1981); *In re Radio Corp.,* 19 B.R. 537, 8 B.C.D. 1273 (Bkrtcy.S.D.N.Y.1982). An earlier decision in the Lafayette Radio case recognized that certain intangibles might satisfy the "adequate assurance" prerequisite. *In re Lafayette Radio Electronics Corp.,* 7 B.R. 189, 6 B.C.D. 1334 (Bkrtcy.E.D.N.Y.1980) (debtor's sublease to a solvent subtenant exhibited the debtor's renewed viability). *See also, In re Bronx-Westchester Mack Corp.,* 9 B.C.D. 50, 20 B.R. 139 (Bkrtcy.S.D.N.Y. 1982), wherein the assignee's financial status, which was superior to that of the debtor, was one of the several considerations which constituted adequate assurance of future performance under an assigned distributor agreement.

Our research has determined that other Courts have considered the proposed assign-

ee's recent business history and that of similar companies in deciding whether the requirement of adequate assurance has been satisfied. *In re Pioneer Ford Sales, Inc.,* 9 B.C.D. 1272, 26 B.R. 116 (Bkrtcy.D.R.I. 1983), involving the approval of an assignment of the debtor's Ford franchise; *In re Taylor Manufacturing, Inc.,* 6 B.C.D. 1161, 6 B.R. 370 (Bkrtcy.N.D.Ga.1980), which authorized the assignment of a debtor's lease to a subsidiary of U.S. Gypsum, which had a history of paying its debts; *In the Matter of Haffner's 5 Cent to $1.00 Stores, Inc.,* 26 B.R. 948, 3 Bankr.L.Rep. (CCH), ¶ 69,160 (Bkrtcy.N.D.Ind.1983), which allowed an assignment when the assignee was in a business of the same kind as the assignor/debtor.

The Court's research in this matter has indicated that the overwhelming majority of the opinions which have considered the question of adequate assurance has granted the debtor's (or the trustee's) request to approve an assignment. It cannot be assumed, however, that such approval was granted without due consideration of the interests of the other parties to the contract or lease. Indeed, in discussing the unenforceability of ipso facto clauses, Congress has directed that the Courts are to be sensitive to the rights of the non-debtor party. H.R. Report No. 95–595, 95th Cong., 1st Sess. (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. So also in this case, the Court must be cognizant of the interests of Helvic Realty, Inc. as well as the interests of the creditors of this estate.

Upon review of the entire record in this case, including the testimony at the hearing in this proceeding, the Court finds that adequate assurance of future performance has been provided by the trustee and the proposed assignee in the following manner:

---

4. Section 2–609(1) of the U.C.C. reads as follows:

2–609 **Right to adequate assurance of performance**

(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecuri-

ty arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

■ An irrevocable letter of credit has been issued by the Landmark Bank of Ladue in favor of the lessor, in an amount equal to the lease payments remaining under the original lease. The lessor has argued that this sum does not provide a guarantee of payment should the lessee exercise its option to renew the lease for two additional three-year terms. This argument must be rejected in view of the other considerations and assurances which appear in the record, and which overcome any uncertainty. There is no requirement at law that a proposed assignee must furnish a letter of credit or other absolute guaranty of payment for the full term of an unexpired lease. The "adequate assurance of payment" element may be provided by a combination of factors as discussed in the cases referred to in this memorandum;

The terms of the lease include personal guarantees of payment by the original parties-lessee. These guarantees are not limited to the original thirty-seven (37) month period, but would continue should the renewal options be exercised. The record indicates that the financial condition of these guarantors has not changed substantially since the original lease was negotiated;

The proposed lessee is experienced in the operation of a business similar to that which was operated by the original lessee. Ms. Rivero testified that she has been teaching courses in fitness and exercise for several years, and that prior to moving to the St. Louis area, she had successfully operated a dance studio in the State of Montana. She stated further that she intended to continue to operate a fitness center, which is the type of business which is presently being conducted from the premises, and which had been conducted by the debtor and its assignor, the original lessee;

The record indicates that a profit has been shown from the operation of a fitness center on these premises, and that continued operation of a similar business will result in additional profits. The potential for these profits provides an additional source of monies to assure payment of the rents during the entire lease period, including that time after the expiration of the letter of credit;

Ms. Rivero, the prospective assignee, has testified further that she has received oral assurances from other professional persons that they would assist her financially should she need additional working capital. These individuals have been identified as a medical doctor, an attorney and a computer expert. She testified further that her personal living expenses have been met in part through a monthly gift of $1,600.00 from her former husband.

The Landmark Bank of Ladue has delivered a written letter of commitment to provide Ms. Rivero with "up to $60,000.00 in financing." *Modern Fitness Exhibit "AA"*. Ms. Rivero testified that this loan would be used in part to pay the trustee to acquire the estate interest in the unexpired lease.

Ms. Rivero has testified further that she enjoys an equity in certain real property for which she has received a conditional offer to purchase in the amount of $250,000.00. Her net worth after sale of this property, including cash and other assets, would be approximately $30,000.00 without reference to the irrevocable letter of credit or the loan commitment from the Landmark Bank of Ladue.

■ Therefore, the Court concludes that the combination of the preceding factors provides adequate assurance of future performance by Ms. Rivero in that the financial resources are available to meet the rental payments; the business to be operated from the premises is substantially the same as that which is presently being conducted there; the assignee has exhibited the ability to operate such a business successfully; and that the assignee has indicated a willingness and the ability to comply with the other terms of the unexpired lease. An additional conclusion which cannot be overlooked is that the assignment of the lease will be of benefit to all creditors of this estate.

The lessor and Ms. Patricia Thuernau have objected to the assignment of the lease on the basis of insufficient time to

investigate the financial background of Ms. Rivero. This argument must be rejected in view of the substantial, credible evidence presented on behalf of Ms. Rivero. Furthermore, the parties are not strangers to one another. As noted in the Court's earlier findings, Ms. Rivero and Ms. Thuernau were partners in the fitness center as lessee in the original lease with Helvic Realty, Inc. in 1981; and the State Court proceedings which preceded the bankruptcy case provided ongoing opportunities for detailed inquiries into the parties' financial backgrounds.