### In re MARTIN PAINT STORES, a Partnership, Debtor.

**Bankruptcy No. 95 B 43607(SMB).**

United States Bankruptcy Court, S.D. New York.

Aug. 6, 1996.

**260**

Siegel, Sommers & Schwartz, L.L.P., New York City (James Beldner, Ronald Sussman, Eric Haber, of counsel), for Debtor.

Teitelbaum, Braverman & Borges, New Hyde Park, New York (Shari Braverman, of counsel), for Creditors Committee.

Gold & Wachtel, New York City (John H. Reichman, of counsel), for Southern Boulevard, Inc. d/b/a Persuasion Ladies' Stores.

Barry S. Schwartz, New York City, for Pretty Girl, Inc.

Feldco Realty Co., Bronx, New York, Landlord pro se.

## MEMORANDUM REGARDING ASSUMPTION AND ASSIGNMENT OF LEASE

STUART M. BERNSTEIN, Bankruptcy Judge.

The debtor presently rents space from Feldco Realty Company ("Feldco") in a commercial building (the "Premises") located at 947 Southern Boulevard in the Bronx. It seeks, with the support of the Creditors' Committee, to assume the lease and assign it

to Pretty Girl, Inc. Pretty Girl sells ladies clothing.

Feldco and Southern Boulevard, Inc. d/b/a/ Persuasion Ladies' Stores ("Persuasion"), another tenant in the Premises who is engaged in the same business as Pretty Girl, object to the proposed assignment. For the reasons that follow, the objections are overruled.[1]

## FACTS

At all relevant times, the debtor was engaged in the retail sale of paint, hardware and other home improvement products at a chain of stores located in the greater New York area. When it commenced this chapter 11 case on August 18, 1995, it operated approximately 30 such stores, including one at the Premises. After initial attempts to reorganize failed, the debtor decided to liquidate and auction its remaining leases.

At the auction, Pretty Girl bid $75,000.00 for the lease at the Premises. The lease runs through July 31, 2007, and the present monthly rental is $9,500.00. The debtor owed Feldco approximately $18,000.00 in prepetition arrears, and the net gain to the estate, after curing the default and paying commissions, would total approximately $40,-000.00. Clearly the highest and best (and only) offer, the debtor and the Creditors' Committee accepted Pretty Girl's bid.[2]

Feldco objected. Through one of its partners, William Feldman, Feldco conceded that the Premises was not a shopping center. He raised several issues, but only two need detain me. First, he contended that Feldco's lease with Persuasion precluded him from renting the debtor's space to Pretty Girl. He did not, however, bring the other lease to court, and I did not consider this objection further at that time.

Second, he pointed to a use clause in the debtor's lease which limited the tenant to selling hardware, paint and related items.

---

**1.** On July 31, 1996, I rendered a bench decision in this matter, and signed an order approving the assumption and assignment. I stated to the parties that I was rendering a bench decision because the resolution of the issue was time sensitive, but that I intended to issue a written decision in light of the issues involved. This decision supersedes my July 31, 1996 oral decision.

**2.** Following the auction, I took testimony from Pretty Girl's president, Albert Nigri. He stated that Pretty Girl operates several ladies' clothing stores in the New York area, and its financial statements showed a net worth of approximately $280,000.00.

Over the years, he had been careful to avoid renting to competitors of his existing tenants, and was concerned that Pretty Girl's presence might harm Persuasion's business and threaten Feldco's ability to collect rent. However, the evidence adduced at an evidentiary hearing conducted on June 26, 1996, showed that the amount of Persuasion's rent did not depend on its sales or income. Further, Persuasion had survived in the face of substantial competition during its ten years at the Premises. According to Feldman, five or six ladies clothing stores already operated within a two block radius, and Persuasion had competed against many of them during its tenancy.

At the conclusion of the June 26, 1996 hearing, I overruled the landlord's objection, granted the debtor's application, and directed the debtor to settle an order which it did shortly thereafter. Before I signed the order, two related events occurred. First, Persuasion commenced a state court action against Feldco and Pretty Girl, and obtained an *ex parte* temporary restraining order that prevented Pretty Girl from selling ladies' clothes at the Premises. The moving papers failed to describe the bankruptcy court proceedings, and the hearing on the preliminary injunction was scheduled five weeks into the future.[3] In addition, Persuasion filed an objection in this court to the proposed order.

Persuasion based its objection on two grounds: the use clause in the debtor's lease, and the exclusivity provision in its own. Its lease with Feldco provides that the "[l]andlord will not rent space in this building to any other tenant who sells ladies clothes exclusively." It is undisputed that Pretty Girl sells ladies' clothes exclusively, and Persuasion asserted that the proposed assignment would cause "irreparable and incalculable injury."

Although I expressed reservations regarding Persuasion's standing, I assumed that it

had standing, and I scheduled an evidentiary hearing for July 24, 1996 to consider Persuasion's objection. The only witness to testify at that hearing was Nathan Cohen, a principal of Persuasion. He described the Premises as a three story commercial building with five stores located at the street level. Aside from the debtor and Persuasion, he did not identify the other tenants.

Mr. Cohen testified that Persuasion has been a tenant at the premises for approximately ten years. During this period, three to four competitors of Persuasion have operated within a two block radius, and three still do. Cohen insisted on the exclusivity provision in Persuasion's lease to limit competition. He testified that Persuasion's sales dropped 20% during the last year when a third competitor moved onto the same block, and opined that Pretty Girl's presence would hurt sales because it could undersell Persuasion, at least on the Pretty Girl-manufactured merchandise which comprised a small part of Persuasion's business. Mr. Cohen also stated that Pretty Girl could adversely affect foot traffic, but was clearly speculating and lacked any expertise on this issue.

I reserved decision, but called the parties in one week later to render an oral decision from the bench. I granted the debtor's application, and signed the order at that time. I stated, however, that the issue of Persuasion's standing still troubled me even though I had assumed standing and heard its objection. I now conclude that Persuasion lacked independent standing to object to the proposed assumption and assignment, and have issued this memorandum primarily to explain my reasoning on this issue.

## DISCUSSION

### A. The Requirements of Section 365

Section 365 governs the assumption and assignment of unexpired leases. In all cases,

---

**3.** The state court action violated the automatic stay, 11 U.S.C. 362(a)(3), even though the debtor was not a party. It interfered with the debtor's ability to assume and assign its lease, and moreover, collaterally attacked the ruling authorizing the assumption and assignment. *Cf. 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427 (2d

Cir.1987) (landlord's attempt to terminate prime lease would destroy debtor's sublease, and therefore, violated automatic stay), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988). Persuasion has represented that the state court action has been or will be terminated immediately.

the debtor must cure any defaults, compensate the lessor for any pecuniary injury, and provide "adequate assurance of future performance." 11 U.S.C. §§ 365(b)(1), 365(f)(2). On this last requirement, the Bankruptcy Code distinguishes between shopping center and non-shopping center leases. Section 365(b)(3), which deals with shopping center leases, provides:

(3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

■ These provisions are intended to protect the landlord's economic expectations rather than those of the other tenants. The legislative history to an earlier version of section 365(b)(3) [4] states:

A shopping center is often a carefully planned enterprise, and though it consists of numerous individual tenants, the center is planned as a single unit, often subject to a master lease or financing agreement. Under these agreements, the tenant mix in a shopping center may be as important to the lessor as the actual promised rental payments, because certain mixes will attract higher patronage of the stores in the center, and thus a higher rental for the landlord from those stores that are subject to a percentage of gross receipts rental agreement. *Thus, in order to assure a landlord of his bargained for exchange,* the court would have to consider such factors as the nature of the business to be conducted by the trustee or his assignee, whether that business complies with the requirements of any master agreement, whether the kind of business proposed will generate gross sales in an amount such that the percentage rent specified in the lease is substantially the same as what would have been provided by the debtor, and whether the business proposed to be conducted would result in a breach of other clauses in master agreements relating, for example, to tenant mix and location.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 348–49 (1977) ("House Report") (emphasis added); *see* S.Rep. No. 989, 95th Cong., 2d Sess. 59 (1978) ("Senate Report").

■ The Bankruptcy Code does not, on the other hand, define "adequate assurance of future performance" in situations involving non-shopping center leases. The legislative history indicates, however, that the focus is still on the prejudice to the landlord:

If the trustee is to assume a contract or lease, the courts will have to insure that the trustee's performance under the contract or lease gives *the other contracting party* the full benefit of his bargain.

House Report at 348 (emphasis added); Senate Report at 59; *accord In re U.L. Radio Corp.,* 19 B.R. 537, 541 (Bankr.S.D.N.Y.1982).

---

4. Prior to the 1984 amendments to the Bankruptcy Code, Section 365(b)(3) required adequate assurance that the proposed assignment would not "breach substantially" any radius, location or exclusivity provision in the subject lease or, *inter alia,* any other lease in the shopping center, 11 U.S.C. § 365(b)(3)(C), or "disrupt substantially any tenant mix, or balance in the shopping center." 11 U.S.C. § 365(b)(3)(D). The 1984 amendments eliminated the concept of "substantiality," and made the prohibitions against breach and disruption absolute.

■ In the absence of any definition of "adequate assurance" courts are counseled to give the phrase a pragmatic construction. *In re Fifth Ave. Originals,* 32 B.R. 648, 652 (Bankr.S.D.N.Y.1983); *In re Evelyn Byrnes, Inc.,* 32 B.R. 825, 828–29 (Bankr.S.D.N.Y. 1983); *In re U.L. Radio Corp.,* 19 B.R. at 542. At a minimum, the primary focus of adequate assurance concerns the assignee's ability to fulfill the financial obligations under the lease. *In re Fifth Ave. Originals,* 32 B.R. at 653; *In re Evelyn Byrnes, Inc.,* 32 B.R. at 829; *In re Brentano's, Inc.,* 29 B.R. 881, 883 (Bankr.S.D.N.Y.1983); *In re U.L. Radio Corp.,* 19 B.R. at 542. It is less clear if any other considerations enter the "adequate assurance" test. The shopping center concepts, "including, *inter alia,* tenant mix and balance and the exclusivity provisions of other leases in the same project, are neither defined nor mandated by the Code" in the non-shopping center setting. *In re Evelyn Byrnes, Inc.,* 32 B.R. at 829. While such factors may also be relevant, courts should afford greater flexibility in the assumption and assignment of non-shopping center leases, and the shopping center considerations assume less importance. *Id.; In re Fifth Ave. Originals,* 32 B.R. at 653; *see In re U.L. Radio Corp.,* 19 B.R. at 544.

■ One particularly nagging issue that crops up when considering "adequate assurance" is the enforceability of use clauses that restrict the type of business that the lessee can conduct. At least in the non-shopping center case, "adequate assurance" does not require literal compliance with a use clause:

Section 365 expresses a clear Congressional policy favoring assumption and assignment. Such a policy will insure that potential valuable assets will not be lost by a debtor who is reorganizing his affairs or liquidating assets for distribution to creditors. This policy parallels case law which disfavors forfeiture. [Citations omitted.] To prevent an assignment of an unexpired lease by demanding strict enforcement of a use clause, and thereby contradict clear Congressional policy, a landlord or lessor must show that *actual and substantial detriment* would be incurred by him if the deviation in use was permitted.

*In re U.L. Radio Corp.,* 19 B.R. at 544 (emphasis added); *accord In re Joshua Slocum, Ltd.,* 922 F.2d 1081, 1091 n. 8 (3d Cir. 1990) ("The court's authority to waive strict enforcement of lease provision in the non-shopping center cases will permit deviations which exceed those permitted in shopping center cases."); *In re Evelyn Byrnes, Inc.,* 32 B.R. at 830 (courts must consider "the practical prejudice suffered by the landlord").

The issues squarely raised by the objections center on the use clause in the debtor's lease and the exclusivity provision in the Persuasion lease. The debtor will cure the lease defaults from the closing proceeds, and Feldco has not claimed any other pecuniary injuries that the debtor must satisfy. Further, neither party has challenged Albert Nigri's testimony or the Court's finding regarding Pretty Girl's wherewithal to meet the financial obligations under the lease. However, before reaching the issue of "adequate assurance of future performance," I must resolve the issue of Persuasion's standing to raise it under Section 365.

**B. Standing**

■ The issue of standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Section 1109(b) of the Bankruptcy Code provides that a party in interest may appear and be heard on any issue in the case. This provision, however, does not confer standing in the absence of a legally protected interest affected by the bankruptcy proceeding, *In re James Wilson Assocs.,* 965 F.2d 160, 169 (7th Cir.1992); *In re Caldor, Inc.,* 193 B.R. 182, 186 (Bankr.S.D.N.Y.1996), and the party asserting standing must show that he is a beneficiary of the bankruptcy provision that he invokes. *In re James Wilson Assocs.,* 965 F.2d at 169; *In re Caldor, Inc.,* 193 B.R. at 186; *McLean Indus., Inc. v. Medical Laboratory Automation, Inc. (In re McLean Indus., Inc.),* 96 B.R. 440, 444–45 (Bankr.S.D.N.Y.1989). He must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or

interests of third parties. *In re Caldor, Inc.*, 193 B.R. at 186 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982)).

▮▮▮▮ "Party in interest" is to be interpreted broadly to allow those parties affected by the chapter 11 case to be heard. 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 1109.02, at 1109–27 (15th ed. 1996). Nevertheless, "party in interest" has a particular connotation in bankruptcy, and its meaning depends upon the purposes of the Bankruptcy Code. *Roslyn Savings Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir.1983). One purpose of bankruptcy is to convert the debtor's assets to cash and distribute that cash to the creditors, *id.; In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr.S.D.N.Y.1989), and hence, a "party in interest" is reserved to the debtor or one who is a creditor of the estate, *In re Comcoach Corp.*, 698 F.2d at 573, or is able to assert an equitable claim against the estate. *In re Ionosphere Clubs, Inc.*, 101 B.R. at 849. Conversely, a creditor of the debtor's creditor is not a "party in interest", *In re Comcoach Corp.*, 698 F.2d at 574; *In re Lifeco Inv. Group, Inc.*, 173 B.R. 478, 487 (Bankr.D.Del.1994); *In re Riverside Nursing Home*, 43 B.R. 682, 684 (Bankr.S.D.N.Y. 1984); *see In re Goldman*, 82 B.R. 894, 896 (Bankr.S.D.Ohio 1988), and the term does not encompass a person who is merely "concerned" with the results of the proceeding. *In re Goldman*, 82 B.R. at 896.

▮▮▮ Persuasion, therefore, lacks standing to challenge the proposed assumption and assignment. Section 365 aims to ensure that the landlord receives the benefit of his bargain, and looks, therefore, to the prejudice to the landlord. It does not deal with a third party's benefit of its own bargain with the landlord, and Persuasion's position is analogous to the creditor of a creditor. In this regard, while the shopping center provisions require the court to consider the effect of the proposed assignment on radius, location and exclusivity provisions in the other tenants' leases, as well as tenant mix, the consideration of these factors is directed at their financial effect on the landlord's ability to collect rent. Further, in the non-shopping center situation, the "other tenant" issues assume even less significance.[5]

The notice requirements in the Federal Rules of Bankruptcy Procedure provide additional, indirect support for this conclusion. Rule 6006(c) requires that notice of a motion to assume, assign or reject an unexpired lease must be given "to the other party to the contract or lease [and] to other parties in interest as the court may direct." The only example of a "party in interest" that is provided is the creditor's committee. *Lindsey v. Department of Labor (In re Harris Mgmt. Co.)*, 791 F.2d 1412, 1415 (9th Cir.1986) (citing the advisory committee notes). The Rule neither requires nor suggests that the motion must be served on the landlord's other tenants, even in shopping center cases. This suggests that under the statutory scheme governing the assumption and assignment of leases, they are not entitled to notice, and hence, lack standing.

*International Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744 (2d Cir.1991), does not compel a different conclusion. There, the Court of Appeals ruled that a mortgagee holding a lien on the debtor's ground lease had standing to appeal an order denying the trustee's motion to extend the time within which to assume or reject the ground lease. *Id.* at 747. While the mortgagee was not a party to the lease, it was a creditor of the debtor, and held a $2 million security interest in the lease. Hence, the rejection would directly and adversely affect its pecuniary interests. *Id.* By contrast, Persuasion is not a creditor of the debtor, and claims no interest or rights in connection

---

**5.** In *U.L. Radio*, Judge Galgay made a specific finding that the contemplated use would not have any adverse effect on the other tenants. 19 B.R. at 545. Although Persuasion points to this finding as support for its right to be heard and its arguments considered, I disagree. Rather, Judge Galgay's statement is consistent with the Court's determination of the financial detriment that the landlord may suffer in light of the effect of that assignment on the other tenants. Further, Persuasion has not pointed me to any non-shopping center case in which a court considered the effect on the other tenants apart from its effect on the landlord.

with, or arising under, the debtor's lease. In particular, Persuasion has never argued that it is an intended beneficiary of the use clause.

To reiterate, Persuasion lacks standing to independently object to the assignment. To crystalize Persuasion's lack of standing, one need only ponder whether Persuasion could object to the lease assignment if Feldco had not objected, or *a fortiori*, affirmatively supported it. As a stranger to the bankruptcy, Persuasion could not object, and Feldco's objection does not change its status or confer standing that does not otherwise exist. Only the landlord can insist on adequate assurance of the future performance, and Persuasion has "piggybacked" on Feldco's rights, lacking its own to assert. Since, however, it has proffered substantially the same evidence as Feldco, I will consider the evidence in connection with Feldco's objection. This does not change the issue before me: does the assumption and assignment of the lease to Pretty Girl, cause "actual and substantial detriment" to Feldco? *See In re U.L. Radio Corp.*, 19 B.R. at 544.

## C. Detriment to Feldco

### 1. The Financial Impact of the Assignment

▮ The evidence failed to demonstrate that the proposed assignment will affect the amount of rent that Feldco collects from Persuasion, or its ability to collect it. The rent under the Persuasion lease does not depend on Persuasion's sales or income. It is fixed. And although Feldco speculates and Persuasion insists that exclusivity is necessary to Persuasion's survival, the clause does not ensure freedom from substantial, direct competition. It merely bars Feldco from renting to a retailer that sells ladies' clothing *exclusively*. If Pretty Girl also sold children's clothing, or shoes or cosmetics, the exclusivity provision would not even apply.

The threat of increased competition pales in light of actual experience. Cohen conceded that Persuasion has always faced stiff competition in the immediate neighborhood, but has remained in business at the same location for ten years. Cohen's testimony regarding a 20% decline in business during the previous year following the addition of one more competitor—there were already several—does not imply that Pretty Girl's arrival will herald a similar decline. Retailers lose sales for many reasons other than increased competition, particularly when competition is already robust. In fact, it is equally likely that the addition of Pretty Girl will bring new customers to the neighborhood and the Premises, resulting in an increase in business for Persuasion. *See Rockland Ctr. Assocs. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.)*, 34 B.R. 299, 303 (Bankr.S.D.N.Y.1983) (stating in *dicta* that "[c]ompetition among women's apparel and shoe stores in shopping centers is salutary because comparison shopping is beneficial for all the competing stores and more potential customers are brought to the center"). In short, the evidence does not support the claim that the presence of Pretty Girl will adversely effect Persuasion's business, and hence, its ability to pay its rent under the lease.

### 2. Other Prejudice

▮ I must also consider the possibility that Feldco could face liability for breach of the Persuasion exclusivity provision if I approve the assignment. Here, I tread on shaky ground for I must construe a lease between third parties, and the binding effect of any conclusion that I reach is open to question. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir.1993), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). Nevertheless, both Feldco and Persuasion have raised this issue before me, and section 365(b)(3), which applies to shopping center leases and arguably guides non-shopping center determinations, permits me to consider the terms of the other tenants' leases in assessing the prejudice to the landlord. Based upon my review, I conclude that Feldco would not be liable to Persuasion because compliance has been rendered legally impossible.

▮ The law excuses performance that has been rendered legally impossible. "Where, after a contract is made, a party's performance is made impracticable without

his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." RESTATEMENT (Second) of Contracts § 261 (1981). In this regard "[i]f the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made." RESTATEMENT (Second) of Contracts § 264 (1981). Under this doctrine, the entry of a judicial order that renders performance legally impossible excuses the party who must perform as long as he did not cause or fail to prevent the entry of the judicial order. *RSB Mfg. Corp. v. Bank of Baroda,* 15 B.R. 650, 654 (S.D.N.Y.1981); *accord Organizacion JD Ltda. v. U.S. Dep't of Justice,* 18 F.3d 91, 95 (2d Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2679, 129 L.Ed.2d 813 (1994).

The impossibility defense relieves Feldco of liability for breach of the Persuasion lease. The order of this Court approving the assumption of the lease and its assignment to Pretty Girl is a judicial action which makes it impossible for Feldco to comply with the exclusivity provision. Persuasion has not come forward with any evidence to suggest that when the parties entered into the lease, they contemplated the effect of another tenant's bankruptcy, or intended that the risk of such a bankruptcy should fall on Feldco. In addition, Feldco objected to the proposed assignment, and did not participate in or contribute to the dilemma in which Persuasion now seeks to place it. Hence, the court-ordered assignment of the debtor's lease to Pretty Girl will not produce a claim for breach of the exclusivity provision under the Persuasion lease.

I recognize that this may create an exception that always swallows the rule. Nevertheless, when all of the other factors point toward permitting the assignment, the exclusivity provision in another tenant's lease cannot stand in the way. This would grant it a veto power over non-shopping center as-

signments in a manner that Congress never intended, and contravene the dual policies favoring assumption and assignment and disfavoring forfeiture. Here, the benefit to the estate and the creditors is substantial; the detriment to Feldco is little more than speculative.

For all of the foregoing reasons, the objections to the proposed assignment are overruled and the application seeking the debtor's right to assume and assign the lease at the Premises to Pretty Girl is granted. The foregoing shall constitute my findings of fact and conclusions of law.