**In re PETERSON'S LTD., INC., Debtor.**

**Bankruptcy No. 82 B 11174 (PBA).**

United States Bankruptcy Court,
S.D. New York.

July 15, 1983.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for debtor and debtor-in-possession.

Carb, Luria, Glassner, Cook & Kufeld, New York City, for landlord.

Winick & Rich, P.C., New York City, Counsel to the Creditors' Committee.

Jay J. Gurfein, New York City, for Rothman Bros., Inc.

PRUDENCE B. ABRAM, Bankruptcy Judge:

The debtor-in-possession seeks authority to assume and assign its lease for its store premises located at the corner of 59th Street and Park Avenue in New York City in an office building with the address of 505 Park Avenue pursuant to an offer from Rothman Bros., Inc. ("J & R"), who has offered $75,000 for the assignment. The offer is conditioned on the court's or the landlord's approval and the court's approval of the use of the premises similar to the offerer's operation of its cigar store at 11 East 45th Street, New York City. Peterson's, whose operation of the 59th store has been unprofitable in the last two years, intends to use the proceeds of the lease sale to fund partially its plan of reorganization.

The landlord, First Park Associates, L.P., has opposed the assumption and assignment of the lease on two grounds: first, that the proposed assignee's use will be a "cut rate" tobacco shop in violation of the use clause of the lease and two, that adequate assurance of future performance has not been provided. The Creditors' Committee supports the application for assumption and assignment. The court held hearings and heard testimony on the issues raised on June 20 and 21, 1982. This opinion constitutes findings of fact and conclusions of law.

Turning first to the alleged use violation, the relevant paragraphs in the Peterson's lease are as follows:

"2. Tenant shall use and occupy demised premises for the retail sale of smoker's articles, food(?) products, candy and items customarily sold in a tobacco emporium. Tenant shall at all times conduct its business in a high grade and reputable manner and shall keep shop windows and signs in a neat and clean condition."

\*      \*      \*      \*      \*      \*

"52. It is understood and agreed that the Tenant shall use the demised premises as a high class tobacco shop similar in character to the tobacco shop presently conducted by the Tenant at Madison Avenue and 44th Stret. In no event shall the premises be used as a cut rate shop."

There was no testimony as to what was meant by the phrase "cut rate shop" at the time the lease was executed nor was the court offered any specific examples of persons to whom that phrase might have applied at the time the lease was executed. The landlord only acquired its interest in 505 Park Avenue in mid-1982 and therefore was not a party to the original lease negotiations.

The landlord contends that the use clause in the Peterson's lease is essential to the reputation of 505 Park Avenue as a high class office building. The Peterson's store is adjacent to the Park Avenue entrance to the office building. There is presently a 5% vacancy factor in the office building.

The Peterson's lease, which was entered into in April 1971, has approximately three more years of its original fifteen-year term left, which term expires April 30, 1986. There is no renewal option and the landlord has stated that it will not offer a renewal term to any proposed assignee. The managing agent testified that the leases for the two adjoining store premises on the 59th Street side expire at approximately the same time as the Peterson's lease and that serious consideration is being given to consolidation of all or some of the three stores at the time the leases expire. If that happens, the usage of the location will be

changed and there will be a period of construction disruption. The store immediately adjacent to Peterson's on the 59th Street side is a discount health and beauty aids store.

J & R, the proposed assignee, sells cigars and pipe tobacco. It stocks the finest branded cigars as well as its own private label cigars and also sells lower priced branded cigars, although it does not sell the cheapest brands. Virtually all sales are by the box. J & R's prices are generally lower than those of other sellers of the same merchandise due to J & R's ability to purchase in bulk. According to the testimony of Lewis Rothman, president of J & R, J & R sells the widest variety of cigars in the country.

J & R is unique in humidifying its entire store, thus converting it into a giant humidor. This allows J & R to display its merchandise in racks and on shelves on the selling floor and to render the operation self-service to that extent. At its 45th Street store, J & R uses open shelving along the walls and uses mobile shelving for displaying merchandise on the selling floor itself. Mobile shelving is used so that the store can be altered on a frequent basis so that it does not become "boring" to customers. Mr. Rothman testified that the 59th Street store would require a different layout, because it is only 1,000 square feet, as compared to the 45th Street store which is 2,200 square feet. Further, the window space and door location at the 59th Street store will require that merchandise be displayed so as to maintain inventory control. It can be anticipated that J & R will make use of Peterson's existing fixtures. Those fixtures have apparently been satisfactory to the landlord during the term of Peterson's occupancy.

The landlord has objected to the appearance of the sales persons at the J & R 45th Street store. Admittedly they wear t-shirts and are casually dressed. Mr. Rothman stated that their duties include unloading trucks. Mr. Rothman further testified that he did not expect that the sales people at the 59th Street store location would unload trucks as there is no place for a truck to stop and that he expected two of the sales people to be women.

The president of Peterson's, Mark Silverman, testified that J & R is a competitor of Peterson's in the retail business and that J & R is more successful than Peterson's. J & R does no advertising and relies on word of mouth.

The landlord has pointed to J & R's neighbors at its former store on West 45th Street in the ill-reputed Times Square area, as evidence of the reputation J & R bears. Firstly, J & R has not occupied that location for several years. Mr. Rothman stated that the lease for the old West 45th Store was terminable on 30 days notice and that therefore expenditure of monies to improve the appearance of what was admittedly a rather dumpy commercial establishment could not be justified. The present J & R operation on East 45th Street, pictures of which were introduced at trial, is an attractive, modern commercial establishment. J & R's lease for its lower Broadway store (which had formerly been a Peterson's store) has recently been renewed by the landlord.

This court is of the opinion that the phrase "cut rate" used in ¶ 52 of the lease must be read in conjunction with the term "high class" used in the preceding sentence of ¶ 52 and "high grade and reputable manner" used in ¶ 2 of the lease. The conjunction of these two phrases leads this court to the view that the principal concern of these clauses is to ensure the operation of a tobacco shop that appeals to a high class clientele, particularly the businessmen tenants in the office space at 505 Park Avenue. This court is satisfied that J & R's operations and product line attracts a high class clientele. There has been no showing that any tenant has objected to the proposed assignee.

This court rules that J & R's operations in manner of displaying merchandise on the selling floor and in pricing policies, are not a violation of the use clause in the Peterson's lease. It is unnecessary for the court to consider the allegations respecting the

shop sign since ¶ 51 requires the landlord's approval of any signs placed on the building facade and ¶ 2 quoted above governs other shop front signs.

The issues presented by this case are quite similar to those raised in *In re Lafayette Radio Electronics Corporation,* 9 B.R. 993 (Bktcy E.D.N.Y.1981). The landlord in that case objected to a sublease to a store doing business under the name "Labels for Less" on the grounds that the mode of business of the proposed sublessee would be detrimental to and have a deleterious effect on the landlord's office building located on Third Avenue at 50th Street, New York City, and would adversely affect the character of the building. The court considered these allegations in detail and noted that the landlord had failed to adduce any evidence that the other stores of the proposed sublessee were disorganized or cluttered, that the merchandise sold was of low quality or that these other operations in any way interfered with the operations of other tenants in those locations. Finding that no showing had been made that the proposed sublessee would lower the dignity of the building the court overruled the landlord's objection. 9 B.R. at 1003. This court has been similarly confronted with the bald unsupported allegations that J & R will somehow lower the dignity of 505 Park Avenue. Mere speculation is insufficient.

Even if the court is wrong in finding that J & R's proposed use conforms with the lease use clause, the court would be prepared to find that very strict construction of the use clause so as to prevent the proposed assignment was unjustified. Given the policy in the Bankruptcy Code against forfeitures of valuable assets of the estate such as unexpired leases, this court is of the opinion that each proposed lease assumption and assignment must be looked at on the basis of its own unique facts to ensure that a proper balance is reached between the landlord's rights and those of the debtor-tenant. The material facts include the length of the lease term, the location, the business and the business viability of the proposed tenant. Here is a lease with a very defined use clause with only a short term remaining and no renewal available. The potential class of possible assignees is small and there was no testimony that any other offer from that small class had been received. Should a debtor be forced to continue a losing operation and potentially be prevented from confirming a plan of reorganization by denying a lease assignment on the facts presented here? This court thinks not.

The matter has been well-stated in *In re U.L. Radio Corp.,* 19 B.R. 537 (Bktcy S.D.N.Y.1982). The court found that it could permit deviations from strict enforcement of any provision of a lease including a use clause. 19 B.R. at 544. It further stated that enforcement of very specific use clauses might prevent assignment and thus circumvent the policy of the Bankruptcy Code. 19 B.R. at 543. The court held:

"To prevent an assignment of an unexpired lease by demanding strict enforcement of a use clause, and thereby contradict clear Congressional policy, a landlord or lessor must show that actual and substantial detriment would be incurred by him if the deviation in use was permitted." 19 B.R. at 544.

No demonstration of any actual and substantial detriment has been shown here.

■ Turning now to the question of the adequate assurance of future performance required by Bankruptcy Code § 365(b)(1)(C) as there has been a default under the lease, the court first notes that J & R is a thriving and successful business. Mr. Rothman, the co-owner of J & R, is a respected authority on cigars and the author of a book on the topic. The court was impressed by Mr. Rothman's business acumen and competence. Peterson's obligations under the lease are apparently not any security deposit. The only default under the lease is for the rent for a three-week period immediately preceding the filing of the Chapter 11 petition and total $2,562.50. It is proposed that as adequate assurance of future performance that J & R will provide a renewable certificate of deposit equal to six months rent. Mr. Rothman testified that

the lease for the 59th Street store will be taken in the name of the corporation which holds the 45th Street lease. He stated that he did not know what the assets and liabilities of that corporation were. Each of the J & R stores is a separate corporate entity. The court is satisfied that the six months security deposit offered, along with the normal incentive of a flourishing business enterprise to thrive further is sufficient to constitute the adequate assurance required. Moreover, a default on the Park Avenue lease could endanger the 45th Street lease. This is not a new business enterprise by an unknown entrepeneur. In the final analysis adequate assurance does not require a 100% guarantee that the lease will be performed. It merely requires "adequate" assurance and that has been provided.

Therefore the application to assume and assign the 59th Street store lease will be granted.