**In re MR. GROCER, INC., et al., Debtor.**

**Bankruptcy Nos. 86–436 to 86–443.**

United States Bankruptcy Court, D. New Hampshire.

Sept. 4, 1987.

Mark Vaughn, Albert A. Notini, Divine, Millimet, Stahl & Branch, Manchester, N.H., for debtors.

Steven Hoort, Ropes & Gray, Boston, Mass., for Bunker and Cox.

Mark N. Polebaum, Paul J. Ricotta, Hale and Dorr, Boston, Mass., for DBG Realty Trust.

Paula Bonnell, United States Trustee's Office, Boston, Mass.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case involves a hotly-contested proposed assignment and assumption of a commercial lease under § 365 of the Bankruptcy Code. The issue presently requiring immediate decision is whether a landlord's contractual right of first refusal regarding any assignment of the lease is enforceable in face of the provisions of § 365(f)(1) of the Code. Remarkably, there appears to be no reported decision dealing with this issue. Counsel for the parties, whose law firms have extensive research facilities, have not been able to find any case on point. The court likewise has not been able to locate any decision relating to this question—notwithstanding the fact that many urban commercial leases involve such clauses.

The issue comes up in the context of two motions filed by the Chapter 11 debtor-in-possession with regard to the sale of a supermarket operation located in Newburyport, Massachusetts. The first motion requests authority to sell assets of the supermarket operation, including inventory, fixtures and related items, together with an assignment of the sublease in question, for a total purchase price of $250,000.00. The second motion is for authority to assume and assign the sublease in question as part of the sale. The two motions are directly related in that the sale contract is expressly conditioned upon a successful assignment of the sublease.

The sales contract allocates $150,000.00 of the total purchase price to the inventory being purchased. The remaining $100,000 is allocated to the equipment, furniture, furnishings and fixtures being purchased, together with the leasehold. The contract makes no further allocation as between these other tangible assets being sold and the leasehold.

■ I use the words "sold" advisedly notwithstanding the landlord's contention that the only "sale" involved relates to the non-leasehold items. In the common parlance of bankruptcy attorneys and their clients this related business transaction does involve a "sale of the lease" to realize its intrinsic value as part of a package deal with the purchasers. This court can take judicial notice that sales of the tangible assets of the business enterprise will normally bring a greater realization to the bankruptcy estate when the sale can be combined with a transfer of a leasehold interest to a purchaser who desires to continue the same type of business operation at the location. I believe accordingly that the landlord's contention that an assumption and assignment of a lease under § 365 is not technically a "sale" under § 363, is first, not correct on the facts presented,

and in any event has no particular weight in the decision that I must render in this case.

The two motions in question were heard together at an all-day hearing on August 6, 1987 that extended well into the night. A continued all-day hearing was scheduled on August 31, 1987 to complete the evidentiary record. Aside from the "first refusal" issue, the landlord in this proceeding has raised numerous other objections to assumption and assignment dealing primarily with the "adequate assurance" and default-curing provisions of § 365(b) of the Bankruptcy Code.

It is not necessary at present to deal with these other issues. On August 25, 1987, the prospective purchasers requested a continuance of the August 31st hearing and an expedited determination of the question of the enforceability of the "first refusal" lease provision. The motion filed by the purchasers recites:

> The prospective Purchasers, Messrs. Bunker and Cox, are in good faith seeking to purchase the assets which are the subject of the Motions. Unless and until there is a ruling on the validity of the asserted right of first refusal, they can have no assurance of their legitimate right to purchase the assets even if all of the requirements for assumption and assignment to Purchasers of the debtor's interest in the Sublease at issue are otherwise complied with. This condition has resulted from the Landlord's position that it can exercise the right of first refusal *after* Bankruptcy Court approval of the sale, assumption, and assignment. This position by Landlord is extremely onerous to Purchasers, since it would require them to engage in the cost and expense of what will be a strongly contested trial and related discovery with no assurance that proof of compliance with § 365 will enable them to conclude the sale.

After a telephonic conference hearing, and considering the numerous depositions that had been set down by the landlord and other related discovery requests, the court granted the motion and continued the Au-

gust 31st hearing to September 14, 1987. The court also agreed that it would decide the "first refusal" issue prior to the continued hearing date, after determining that no party desired to put forward any additional evidence on that issue.

## THE CONTRACTUAL PROVISION

Paragraph 15 of the sublease contains a "Right of First Refusal" clause which provides as follows:

> In the event any or all of Tenant's interest in the Demised Premises and/or this Lease is transferred by operation of law to any trustee, receiver or other representative or agent of Tenant, or to Tenant as a debtor-in-possession, and subsequently any or all of Tenant's interest in the Demised Premises and/or this Lease is offered or to be offered by Tenant or any trustee, receiver, or other representative or agent of Tenant as to its estate or property (such person, firm or entity being hereinafter referred to as the "Grantor"), for assignment, conveyance, lease or other disposition to a person, firm or entity other than Landlord (each such transaction being hereinafter referred to as a "Disposition"), it is agreed that Landlord has and shall have a right of first refusal to purchase, take or otherwise acquire the same upon the same terms and conditions as the Grantor thereof shall accept upon such Disposition to such other person, firm or entity; and as to each such Disposition the Grantor shall give written notice to Landlord in reasonable detail of all of the terms and conditions of such Disposition within fifteen (15) days next following its determination to accept the same but prior to accepting the same, and it shall not make the Disposition until and unless Landlord has failed or refused to accept such right of first refusal as to the Disposition, as set forth herein.
>
> Landlord shall have sixty (60) days next following its receipt of the written notice as to such Disposition in which to exercise the option to acquire Tenant's interest by such Disposition, and the exercise of the option by Landlord shall be effected by written notice to that effect

sent to the Grantor by certified or registered mail; but nothing herein shall require Landlord to accept a particular Disposition or any Disposition, nor does the rejection of any one such offer of first refusal constitute a waiver or release of the obligation of the Grantor to submit such other offers hereunder to Landlord. In the event Landlord accepts such offer of first refusal, the transaction shall be consummated pursuant to the terms and conditions of the Disposition described in the notice to Landlord. In the event Landlord rejects such offer of first refusal, the Grantor may consummate the Disposition with such other person, firm or entity; but any decrease in price of more than two (2) percent of the price sought from Landlord or any change in terms of payment for such Disposition shall constitute a new transaction requiring a further option of first refusal to be given to Landlord hereunder.

Notwithstanding the sixty-day provision of this clause, the landlord in the present case has offered, in its pleadings, to agree to exercise its right of first refusal within ten days after the entry of an order by the bankruptcy court approving assumption and assignment of the sublease to the prospective purchasers in this case.

## THE STATUTORY LANGUAGE

■ The statutory provisions in question, i.e., Subsections (f)(1) and (f)(2) of § 365 of the Bankruptcy Code, provides as follows:

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

The appropriate way to start in any statutory construction matter is with "the plain language of the statute" itself. *INS v. Cardoza-Fonseca,* —— U.S. ——, ——, 107 S.Ct. 1207, 1214, 94 L.Ed.2d 434 (1987). It should therefore be noted that § 365(f)(1) invalidates (for transfer purposes in a bankruptcy case only) any lease provision "that prohibits, restricts or conditions the assignment" of a lease held by a trustee or debtor-in-possession. The provision is in the disjunctive and accordingly would invalidate any provision that "restricts or conditions" assignment even though it does not necessarily "prohibit" assignment. This simple point takes away much of the force of the landlord's contention at the hearing and in briefs to the effect the right of first refusal does not *preclude* assignment but simply determines *who* the ultimate assignee will be.

■ The fact is that Congress by its plain language has rendered unenforceable in the bankruptcy context any lease provision that restricts or conditions the assignment of a lease—whether or not assignment is directly prohibited by the lease provision. It is hard to imagine any restriction or condition upon assignment of a lease more clearly within the legislative language than a lease provision which not only directly refers to assignment of the lease, but also further provides that any assignment is conditioned upon the landlord first having a right of first refusal to take the leasehold interest away from the prospective assignee.[1] This reading of the

---

1. On this point I also note the statement in the purchasers' brief that: "As a matter of state law, a right of first refusal is plainly a restriction on assignment, since it is enforced by means of a court-ordered injunction of the proposed assignment. See, e.g., *Manella v. Brown Co.,* 537 F.Supp. 1226, 1229 (D.Mass.1982)."

statutory language renders immaterial the absence of any legislative history references indicating that Congress considered rights of first refusal, and the absence of any prior case decisions so deciding.[2] I therefore conclude that the statutory question must be answered in affirmative, i.e., rights of first refusal granted a landlord in a lease provision *are* unenforceable by virtue of provisions of § 365(f)(1) of the Bankruptcy Code against a trustee or debtor-in-possession seeking to assume and assign a lease.

## ALTERNATIVE CONTENTIONS

The foregoing discussion is sufficient to decide this matter, but in view of the considerable briefing and varied arguments raised by the landlord, the debtor, and the prospective purchasers on this matter it may be useful to set down a few additional comments. The court itself invited counsel to supply references to any "analogous situations" in the absence of any reported cases dealing with rights of first refusal in the leasehold context.

### (1) The "Chilling" Effect

The debtor and the prospective purchasers both argued in the present case that first refusal rights would have a "chilling effect" upon obtaining bids for the acquisition of leasehold interests in bankruptcy proceedings. The landlord retorts that enforcing the right of first refusal here would not be essentially different than the common practice of taking "other bids" at bankruptcy sale hearings. The short answer to the landlord's contention in this regard is that it is *not* offering any "higher or better bid" possibility, but is simply insisting upon a contractual provision to take away the assignment *at the same price* bid by these prospective purchasers. Likewise, the landlord's argument that "this estate will not be hurt" because in no event will the estate get less than the bid price is essentially specious. That contention begs

the question as to whether the eventual effect of enforcing first refusal rights would not discourage prospective purchasers and assignees from making the effort *to initially put a bid before the bankruptcy court to be matched.*

Moreover, the package sale of the supermarket assets and leasehold to the prospective purchasers here in question does not attempt to allocate a portion of the purchase price to the leasehold alone. This is not uncommon in such offers for many reasons, including tax considerations of the buyer that have no importance to the bankruptcy estate. Thus, the landlord's glib assertion that it will "pay the same price" if it exercises its right of first refusal leaves unanswered the practical question of *what is that price* and how many more hearings would be necessary to determine the matter even *after* the court completed its evidentiary hearing on the financial status of the prospective purchasers and entered its order approving assumption and assignment of the sublease on the basis of adequate assurance of future performance.

To require prospective bidders to engage in such additional litigation, or to re-cast their offers in a form convenient to the landlord but perhaps undesirable to them for tax or other reasons, will simply add to the obstacles trustees and debtors face in getting competitive bidding for their assets.

Accordingly, if the "chilling effect" contention were material to my decision in the present case, and I had to decide it on the basis of the present record, I would conclude that enforcement of such provisions necessarily must have some chilling effect. It should also be added that the "chill" well may be intensified if prospective bidders must be advised that they not only have a duty to disclose their financial condition and assets in great detail, to satisfy the "adequate assurance" requirement, but

---

**2.** I realize that even where the "plain language" of a statute indicates a particular result the Supreme Court has indicated that legislative history still may be consulted to determine whether there is a "clearly expressed legislative intention" to the contrary. See *U.S. v. James,* 478

U.S. ——, ——, 106 S.Ct. 3116, 3122, 92 L.Ed.2d 483 (1986); *Consumer Product Commission v. GTE,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The point is academic here since there is no such indication in the legislative history of § 365(f) of the Bankruptcy Code.

also that the assets in question could be taken away from them even *after* a court order approving the same has been entered—not by virtue of any higher bid but simply at the same price under a first refusal right.[3]

### (2) *The "Analogous" Cases*

The landlord also argues that the present case is analogous to the situation of "use clauses" which some courts have held are enforceable in a bankruptcy proceeding notwithstanding the contention that such clauses are a "restriction" upon assignment. Aside from the obvious fact that a use clause does not directly refer to or expressly restrict and condition assignment, as does the clause in question in the present case, the great majority of decisions to date on the point find that the bankruptcy court does have discretionary power to authorize some deviation in the use of premises where there is no demonstrable economic detriment to the landlord. See, e.g., *Matter of U.L. Radio Corp.*, 19 B.R. 537 (Bankr.S.D.N.Y.1982); *In re Peterson's Ltd., Inc.*, 31 B.R. 524 (Bankr.S.D. N.Y.1983); *In re Evelyn Byrnes, Inc.*, 32 B.R. 825 (Bankr.S.D.N.Y.1983); *In re Grudoski*, 33 B.R. 154 (Bankr.D.Hawaii 1983).

Even in the case of shopping center leases, which are subject to more stringent requirements under § 365(b)(3), including an explicit prohibition against any changes in the use of the premises, the courts have found some equitable discretion in dealing with particular assumption and assignment cases. See *In re Vista VI, Inc.*, 35 B.R. 564 (Bankr.N.D.Ohio 1983). Bankruptcy courts have also found cross-default clauses in leases and other executory contracts unenforceable because of their indirect effect in precluding realization of intrinsic values. *In re Sambo's Restaurants, Inc.*, 24 B.R. 755 (Bankr.C.D.Cal.1982); *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 772 (Bankr.W.D.Pa.1985).

The only case to which the landlord points in supporting its "analogous situa-tion" contention is the decision in *In re Pin Oaks Apartments*, 7 B.R. 364 (Bankr.S.D. Tex.1980). While this decision does have some rather broad language concerning the bankruptcy court's inability to "rewrite" lease contracts, the actual basis of the decision involved far more than a simple modification of any use clause. It involved instead a substantial rewriting of the financial terms of the lease in question, through the artful device of an assignment and immediate sublease to another party under different terms and conditions. See critical discussion in *In re Evelyn Byrnes, Inc.*, supra, 32 B.R. at p. 830.

Again, if the court in the present case were compelled to rule upon the "analogous situation" basis, apart from the plain statutory language determination above, I would conclude that the case law interpreting § 365(f)(1) of the Bankruptcy Code establishes that the court does retain some discretion in determining that lease provisions, which are not themselves *ipso facto* anti-assignment clauses, may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets. This inherent power was found to exist by the Court of Appeals for the Second Circuit in its decision in *Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2nd Cir.1974), in the absence of any statutory requirement then authorizing the striking down of anti-assignment lease clauses, and I believe that equitable power continues to exist under the Bankruptcy Code to the extent that construction of the language "restricts or conditions the assignment" in § 365(f)(1) is necessary in a particular case upon its particular facts and circumstances. Cf. *Matter of U.L. Radio Corp.*, supra, 19 B.R. at p. 543; *In re Peterson's Ltd., Inc.*, supra, 31 B.R. at p. 527; *In re Evelyn Byrnes,*

---

**3.** Of course nothing prevents a landlord, or any other third party for that matter, from appearing at a hearing on a sale and assignment involving a leasehold interest, to make a higher and better offer of such substantial amount that the sale before the court could be deemed to be "improvident" and thus a sale that should not be judicially confirmed. See, *In re Gil-Bern Industries, Inc.*, 526 F.2d 627 (1st Cir.1975).

*Inc.,* supra, 32 B.R. at p. 830; *In re Huntington Ltd.,* 654 F.2d 578, 584, n. 7 (9th Cir.1981); Simpson, "Leases and the Bankruptcy Code: Tempering the Rigors of Strict Performance", 38 *The Business Lawyer* 61 (November 1982).

In the present case the landlord has not shown any economic detriment from losing the enforceability of its right of first refusal, nor as a matter of law does it appear that it *could* show such economic detriment, since the lease terms and conditions otherwise will remain unchanged and the separate "adequate assurance" requirement of § 365(f)(2) is understood to require that the landlord economically will receive "the full benefit of his bargain." See *Matter of U.L. Radio Corp.,* supra, 19 B.R. at p. 543, and cited legislative history.

## CONCLUSION

A right of first refusal in effect allows a landlord to determine for himself whether the prospective assignee is substantial and will be able to perform. Whether wisely or not, Congress has placed that determination in the hands of the bankruptcy court under the "adequate assurance" requirement accompanying the anti-assignment provision of the Code. The only other "economic detriment" the landlord might argue is that the loss of the first refusal right removes his economic leverage in negotiating higher rentals with the prospective assignee, but since such a negotiation would necessarily mean the buyer would offer less to the bankruptcy estate for the leasehold interest, we come back full circle to the underlying policy of the anti-assignment provision, i.e., permitting the bankruptcy estate to realize the maximum intrinsic value of the leasehold asset.

For all of the foregoing reasons, but basically because the statute says what it says so plainly that it needs no extended construction, it is hereby determined that paragraph 15 of the sublease in question in the present case is determined not to pre-

clude assumption and assignment of the sublease to the prospective purchasers herein free of the right of first refusal, provided that all other statutory requirements are established.[4] The case will proceed to the further evidentiary hearing scheduled and the findings and conclusions included in this Memorandum Opinion will be incorporated by reference in the ultimate order and judgment of this court on the matter.

---

**4.** It should also be noted that no party has raised the possible application of § 365(e) to the question in issue due to the fact that the right of first refusal involved arises *only* in the event of bankruptcy or other legal receivership situation. In the absence of any argument or briefing on that point the court expresses no opinion as to its possible application.