NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3159
_____

In re:  HAGGEN HOLDINGS, LLC, et al.,
                                                        Debtors

v.

ANTONE CORP,
                        Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 1-15-cv-01136)
Honorable Gregory M. Sleet, District Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 22, 2018

BEFORE:  McKEE, SHWARTZ, and COWEN, Circuit Judges

(Opinion Filed: July 17, 2018)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

COWEN, Circuit Judge.

Antone Corp. ("Antone") appeals from the order of the United States District Court for the District of Delaware affirming the order entered by the United States Bankruptcy Court for the District of Delaware, which approved an asset purchase agreement and allowed Haggen Holdings, LLC and its affiliates ("Debtors") to sell certain assets. We will affirm.

I.

Haggen Holdings, LLC owned and operated 164 grocery stores and one pharmacy through three operating companies, including Haggen Opco South, LLC. In 2015, Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. They asked the Bankruptcy Court to approve bidding procedures for the sale of a number of stores as well as the assumption and assignment of certain executory contracts and unexpired leases. This sale motion implicated a commercial lease between Haggen Opco South, LLC, and Antone (the "Lease").

Appellees provided notice of assumption, assignment, and cure amounts with respect to the executory contracts and unexpired leases, including the Lease. Antone objected to this notice, asking the Bankruptcy Court to determine that, among other things, "the Lease cannot be assumed and assigned unless . . . the Debtor provides for payment to Landlord of one-half of the net profit realized by the Debtor upon transfer and assignment of the Lease to a third party, as provided under the Lease." (A553.) The Lease (as amended in 1993) included a "Profit Sharing Provision." The provision stated in relevant part that, "[i]n the event Tenant assigns this Lease or sublets more than fifty

2

percent (50%) of the demised premises, Tenant shall deliver to Landlord fifty percent (50%) of any 'net profits' (as such term is hereinafter defined) within thirty (30) days of Tenant's receipt thereof pursuant to such assignment or subletting." (A632.) In support of the objection, Antone filed a declaration executed by its president and chief executive officer.

After conducting a marketing and auction process approved by the Bankruptcy Court, Appellees identified Good Food Holdings (d/b/a Bristol Farms) as the successful bidder for the store subject to the Lease. Antone filed a limited objection to the notice of sale as well as a supporting declaration from an experienced real broker (who works as a consultant for Antone). Antone specifically "objects to the sale until Debtors . . . comply with the specific lease provisions identified in the Declaration, including . . . the provision at ¶ 9 of the Lease providing for payment to Landlord of one-half of the net profit realized by the Debtor, as Tenant, upon the assignment and transfer of the Lease to the Purchaser." (A931.)

Following a hearing, the Bankruptcy Court overruled Antone's objection, approved the sale, authorized assumption and assignment of the Lease, and prohibited enforcement of the Profit Sharing Provision. In particular, it agreed with Debtors that the Lease's profit sharing provision "is an anti-assignment provision and it's unenforceable under [11 U.S.C. § 365(f)(1)]." (A73.) Antone appealed to the District Court, which affirmed the order of the Bankruptcy Court. See In re Haggen Holdings, LLC, Civ. No. 15-1136 (GMS), 2017 WL 3730527 (D. Del. Aug. 30, 2017).

II.

3

Section 365(f)(1) states in relevant part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection."[1] Antone contests the application of this statutory provision in this case, insisting that "[t]he courts below erred by relying too heavily on solely the outcome of non-binding precedent and, in doing so, failed to engaged in an analysis of the Profit Sharing Provision pursuant to this Court's guidance regarding the proper analysis to be conducted prior to excising economically material contract provisions." (Appellant's Brief at 14.)  According to Antone, the Lease could not conceivably be read to prohibit, restrict, or condition assignment.  It insists that, even if the Profit Sharing Provision did constitute such a prohibition, restriction, or condition, a court must still undertake a fact-specific inquiry balancing two competing policies (namely, the policy requiring that the non-debtor receive the full benefit of its bargain, and the policy that anti-alienation clauses not defeat the ability of the debtor or the trustee to realize the full value of the debtor's assets).  Relying on the declarations it submitted below and taking into account the interdependent provisions of the Lease,

---

[1]  The Bankruptcy Court had subject matter jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The District Court exercised jurisdiction over Antone's appeal pursuant to 28 U.S.C. § 158, and we have appellate jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over the District Court's ruling, see, e.g., In re Seven Fields Dev. Corp., 505 F.3d 237, 253 (3d Cir. 2007), which "effectively amounts to review of the bankruptcy court's opinion in the first instance," In re Hechinger Inv. Co. of Del., 489 F.3d 568, 573 (2007) (quoting In re Hechinger Inv. Co. of Del., 298 F.3d 219, 224 (3d Cir. 2002)).  Legal determinations are reviewed de novo, and findings of fact are reviewed for clear error.  See, e.g., Hechinger Inv., 489 F.3d at 573.

Antone asserts that the Profit Sharing Provision was the product of a bargained-for exchange, i.e., the landlord agreed to a term extension, fixed rent, and the elimination of various use restrictions in exchange for half of the tenant's leasehold interest in any profits derived from an assignment of the Lease. Purportedly, the rulings below thereby took the equity that Antone had built up since the Profit Sharing Provision was added to the Lease and transferred its own property to Debtors and the bankruptcy estate. "Because such proceeds are the property of Antone—and not the property of Haggen or [property of the bankruptcy estate]—enforcing the Profit Sharing Provision . . . strikes the proper balance between[ ] the right of Antone to get the performance it bargained for and the right of Haggen's creditors to get the benefit of the debtor's bargain." (Id. at 16 (citing In re Fleming Cos., 499 F.3d 300, 305-06 (3d Cir. 2007)).)

Nevertheless, the Bankruptcy Court and the District Court properly determined that the Profit Sharing Plan was unenforceable. Initially, it is undisputed that Antone has not cited any cases actually enforcing such a provision. It likewise has failed to provide any legal authority supporting its assertion that it possessed a property interest in the sale proceeds. In contrast, we noted that "Section 365(f)(1) was designed to prevent anti-alienation or other clauses in leases and executory contracts assumed by the Trustee from defeating his or her ability to realize the full value of the debtor's assets in a bankruptcy case." In re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1993) (footnote omitted). The plain language of § 365(f)(1) encompasses more than merely provisions that actually prohibit the assignment of an executory contract or an unexpired lease; the statutory provision also extends to any clause that "restricts, or conditions" such

5

assignment. See, e.g., In re Great Atl. & Pac. Tea Co., No. 15 Civ. 8932 (NSR), 2016 WL 6084012, at *3-*4 (S.D.N.Y. Oct. 17, 2016) ("A&P"). The Lease's Profit Sharing Plan expressly stated that, "[i]n the event Tenant assigns this Lease . . ., Tenant shall deliver to Landlord fifty percent (50%) of any 'net profits.'" (A632.) As the Bankruptcy Court aptly explained, a number of courts have found that contractual provisions that were "very much akin, if not identical to the provision that you're seeking to enforce here" constituted unenforceable anti-assignment provisions under the Bankruptcy Code (A73-A74). See, e.g., A&P, 2016 WL 6084012, at *1-*6; Robb v. Schindler, 142 B.R. 589, 589-92 (D. Mass. 1992); In re Boo.com N. Am., Inc., No. 00-15123 (JHG), 2000 WL 1923949, at *1-*4 (Bankr. S.D.N.Y. Dec. 15, 2000); In re Jamesway Corp., 201 B.R. 73, 74-79 (Bankr. S.D.N.Y. 1996); In re Howe, 78 B.R. 226, 226-31 (Bankr. D.S.D. 1987).

We also are not persuaded by Antone's discussion of the case law. As the District Court recognized, In re Joshua Slocum Ltd, 922 F.2d 1081 (3d Cir. 1990), specifically addressed a bankruptcy court's authority to excise a minimum sales provision from a shopping center lease given the specific protections provided to shopping center lessors under 11 U.S.C. § 365(b)(3), id. at 1086-92. We explained that "Denney Block is a 'shopping center' and thus, § 365(f) does not apply." Id. at 1090. Antone acknowledges that our discussion of how we "*would have* decided 'if [landlord's collection of properties] were not a shopping center'" constituted dicta. (Appellant's Reply Brief at 13 (quoting Joshua Slocum, 922 F.2d at 1091).) In any event, Joshua Slocum did not implicate a profit sharing provision. Furthermore, the bankruptcy court in In re E-Z

6

Service Convenience Stores, Inc., 289 B.R. 45 (Bankr. M.D.N.C. 2003), considered whether to enforce a landlord's right of first refusal, id. at 47-55. "[A] right of first refusal will often benefit a debtor's estate by creating a bidding war between potential purchasers of estate assets, and 'the Debtors' estate is entitled to the full benefit of the best offer' that can be negotiated. See [id. at 52]." Haggen Holdings, 2017 WL 3730527, at *5. "Profit sharing provisions, on the other hand, as Debtors point out, 'function only to extract value that would otherwise accrue to a debtor's estate, for the sole benefit of an individual landlord.'" Id. (quoting Dist. Ct. Docket Entry No. 14 at 13). Finally, Antone compares the profit sharing provision at issue in A&P to a liquidated damage or penalty clause. However, just like Antone, the landlord in that case argued that the provision was enforceable because it was the result of a bargained-for exchange between the parties. A&P, 2016 WL 6084012, at *2. The A&P court appropriately considered and rejected this argument. See, e.g., id. at *6 (observing that, although profit sharing provision was part of carefully negotiated bargain, benefits of bargain gave way to countervailing bankruptcy policy considerations).

III.

For the foregoing reasons, we will affirm the order of the District Court.

7